UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

NESTLE WATERS NORTH AMERICA,
INC.,

                           **Plaintiff,**

                **-against-**

THE CITY OF NEW YORK and
DEPARTMENT OF FINANCE OF THE
CITY OF NEW YORK,

                    **Defendants.**

------------------------------------------------------- x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 5/25/16

**15-cv-05189 (ALC)**

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

     Plaintiff Nestle Waters North America, Inc. ("Nestle") brings suit against the City of

New York ("City") and the Department of Finance of the City of New York, seeking to recover

more than $4 million it paid in fines on more than 40,000 parking summonses. Plaintiff alleges

that Defendants maintained an unlawful and deliberate policy of issuing and enforcing

jurisdictionally defective parking summonses. Plaintiff brings claims, pursuant to 42 U.S.C.

§§ 1983 and 1988, that this policy violated Plaintiff's constitutional rights to procedural and

substantive due process. Plaintiff also brings a state law claim of unjust enrichment. Defendants

move to dismiss all claims, and Plaintiff cross-moves for summary judgment. For the reasons

stated herein, Defendants' motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

### I.   Factual Background

     The following is drawn from Plaintiff's Complaint, as well as documents of which the

Court may take judicial notice.[1]

---

[1] As discussed at greater length below, in deciding motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), courts
may consider facts as asserted within the complaint, as well as matters of which judicial notice may be taken. *See*

Plaintiff is a corporation that owns commercial trucks and operates them across state lines. (Compl., ECF No. 4, ¶ 12.) It participates in the International Registration Plan ("IRP"), a registration reciprocity agreement among states, the District of Columbia, and provinces of Canada. (Compl. ¶ 12.) Under the terms of the IRP, states issue special commercial license plates to trucks registered under the IRP. (Compl. ¶ 14.) The plates issued by New York bear the term "APPORTIONED" ("Apportioned Plates"), and the plates issued by every other state bear the term "IRP" ("IRP Plates"). (Compl. ¶¶ 14-15.)

Plaintiff operates commercial trucks in New York City. (Compl. ¶ 2.) Within the City, the Department of Finance of the City of New York, commonly called the Parking Violations Bureau ("PVB"), administers and adjudicates parking violations. (Compl. ¶¶ 1, 11.) Under New York Vehicle and Traffic Law ("VTL") § 238(2), any notice of violation or summonses issued for a parking violation must include "plate type as shown by registration plates of said vehicle," as well as four other elements. (Compl. ¶¶ 18-19 (quoting VTL § 238(2)). "[VTL] § 238(2) requires strict compliance with respect to the five (5) elements identified therein as necessary for the issuance of a proper summons for a parking violation." (Compl. ¶ 18.) However, PVB "maintained a policy of issuing summonses for parking violations to out-of-state trucks wherein the description 'IRP' was regarded as an accurate physical description of an 'APPORTIONED' license plate." (Compl. ¶ 16.)

On March 24, 2012, Plaintiff appeared at a hearing before the PVB's Commercial Adjudications Unit to contest the issuance of 38 parking summonses to its trucks, on the ground that the description "IRP" was not an accurate physical description of the Apportioned Plates that the trucks bore. (Compl. ¶ 17.) At this hearing, an administrative law judge ("ALJ") upheld the

---

*Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). Judicial notice may be taken of proceedings in other courts. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

issuance of the summonses, adjudicated Plaintiff guilty on all summonses, and imposed fines in the total amount of $3,835.00. (Compl. ¶ 20.) On June 26, 2012, Plaintiff appeared at a hearing before the Appeals Board ("Board") of the PVB to appeal that adjudication on the ground that the ALJ had failed to consider the evidence submitted and failed to apply the law, contravening the Vehicle and Traffic Law. (Compl. ¶ 21.) The Board found no error of law or fact and upheld the judgment of the Commercial Adjudication Unit ALJ. (Compl. ¶ 22.)

In October 2012, Plaintiff initiated an Article 78 proceeding in the Supreme Court, New York County, seeking annulment of the final determination of the Board, remission of all fines paid in connection with the 38 summonses challenged, and a declaratory judgment deeming Defendants' policy violative of VTL § 238(2). (Compl. ¶ 23). Plaintiff also sought preliminary and permanent injunctive relief, enjoining Defendants from adjudicating or affirming an adjudication of guilt as to any parking summons on which an Apportioned Plate is described as an IRP Plate, requiring Defendants to dismiss all such summonses before them for adjudication, and vacating and annulling any and all determinations previously made on the basis that "IRP" and "Apportioned" are interchangeable. (Notice of Art. 78 Pet., Exh. B, Stitelman Decl. ("Notice of Pet."), ECF No. 18-2, ¶¶ 4-7.) Finally, Plaintiff sought to certify a class of individuals or entities with such plates, who had received such summonses. (Art. 78 Pet., Exh. B, Stitelman Decl. ("Art. 78 Pet."), ECF No. 18-2, ¶¶ 9-17.)

On March 8, 2013, the Supreme Court, New York County, denied Plaintiff's Article 78 Petition. (Compl. ¶¶ 24.) The Court found:

> Pursuant to VTL § 238(2), the parking violation must contain . . . the plate type as shown by the registration plates of the subject vehicle. "If any information which is required to be inserted on a notice of violation is misdescribed the violation shall be dismissed upon application of the person charged with the violation." (VTL §[2-a][b]). . . .

> Here, a rational basis exists for the [Appeals Board's] determination affirming [the ALJ's] finding of guilt for the 38 subject parking violation. Respondent annexes the ALJ Manual, which states in relevant part, "'APP' and 'IRP' on the face of the summons is sufficient to establish a prima facie case because these acronyms are used interchangeably." . . . Since the record established that the plate type on the 38 subject parking violations was accurately described as "IRP" and since Petitioner did not present any other defense or evidence to refute the prima facie evidence within the parking violations, the Appeals Board's final determination denying Petitioner's appeal was rational and reasonable.

*Nestle Waters N. Am., Inc. v. City of New York*, No. 104096-2012, 2013 WL 861330 (N.Y. Sup. Ct. Feb. 28, 2013) (alterations omitted). The Court denied the petition, and denied all other requested relief. *Id.* It nowhere mentioned the request for class certification. *Id.*

Plaintiff appealed this decision to the Appellate Division, First Department. (Compl. ¶ 24.) It again challenged the 38 specific summonses at issue, and moved for class certification. (Pl.'s Appeal, Exh. E, Stitelman Decl. ("Pl.'s Appeal"), ECF No. 18-5.) On July 31, 2014, the First Department issued an order reversing the Supreme Court's dismissal of the Article 78 Proceeding, annulling the final determination of the Board, vacating and dismissing the challenged summonses, and declaring that Defendants' "policy of deeming 'IRP' an accurate description of 'Apportioned' license plates issued outside of New York State is violative of § 238 of the Vehicle and Traffic Law." The First Department explained:

> The Court of Appeals has required strict compliance with the requirements of VTL § 238(2) . . . holding that the five mandatory identification elements, which may not be omitted from a parking summons if it is to avoid dismissal, may also not be misdescribed. Thus, a misdescription of any of the five mandatory identification elements also constitutes a jurisdictional defect mandating dismissal.
>
> Similarly, this Court is bound by the plain language of VTL § 238(2). We must conclude that the New York City Parking Violations Bureau's policy of deeming "IRP" an accurate description of out-of-state "APPORTIONED" license plates for purposes of adjudicating parking violations violates the statute. . . .
>
> In short, the petition should have been granted because the final determination made by respondent to adjudicate petitioners guilty on each of the summonses was contrary to

4

well established law. Dismissal of the traffic summonses was warranted since they failed to comply with the mandatory requirements of VTL § 238(2).

*Nestle Waters N. Am., Inc. v. City of New York*, 990 N.Y.S.2d 512, 516 (2014) (internal citations omitted). This decision, too, was silent as to class certification.

On November 10, 2014, Plaintiff served a Notice of Claim upon Defendants, demanding reimbursement of fines paid for 41,800 jurisdictionally defective summonses issued to its trucks, from 2010 until the filing of the Notice. (Compl. ¶ 26.) Plaintiff demanded reimbursement in the amount of $4,101,835.000. (Compl. ¶ 27.) On March 24, 2015, Defendants denied Plaintiff's claim. (Compl. ¶ 28.) This action followed.

## II.    Procedural Background

Plaintiff initiated this suit on July 2, 2016, bringing claims pursuant to 42 U.S.C. §§ 1983 and 1988 that Defendants violated its Fourteenth Amendment rights to procedural due process and substantive due process. Plaintiff also brings a state law claim of unjust enrichment. Defendants moved to dismiss the action on January 20, 2016. (ECF No. 17.) Plaintiff moved for summary judgment on February 16, 2016. (ECF No. 21.) Each side opposes the other's motion. (ECF Nos. 20, 25.) The Court will begin by considering the motion to dismiss.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept

all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). However, the court need not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678, 681 (citing *Twombly*, 550 U.S. at 555). The complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & iStone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

In addition, "[d]ismissal under [Rule] 12(b)(6) is appropriate when a defendant raises claim preclusion . . . as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l,* 231 F.3d 82, 86 (2d Cir. 2000) (citing *Day v. Moscow,* 955 F.2d 807, 811 (2d Cir. 1992)).

To decide the motion, the court "may consider facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation and internal quotation marks omitted). The Court may also consider "matters of which judicial notice may be taken." *Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir. 1993). "Judicial notice may encompass the status of other lawsuits in other courts and the substance of papers filed in those actions." *Johnson v. Levy*, 812 F. Supp. 2d 167, 176 (E.D.N.Y. 2011) (citation omitted); *see also Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). But "[a] court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" *Int'l Star Class Yacht*

*Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (quoting *Liberty*

*Mutual Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992)). Thus,

though a court may take judicial notice of an opinion by another court, "it may do so on a motion

to dismiss only to establish the existence of the opinion, not for the truth of the facts asserted in

the opinion." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir.

2006) (quoting *Lum v. Bank of America*, 361 F.3d 217, 222 n. 3 (3d Cir. 2004)).

## DISCUSSION

Defendants move to dismiss each of Plaintiff's claims. As an initial matter, Defendants

argue that Plaintiff's claims are barred by res judicata. In the event that the claims are not barred

by res judicata, Defendants argue that Plaintiff's constitutional claims cannot be brought in

federal court because Plaintiff did not first bring them through Article 78 proceedings in state

court. Next, even if Plaintiff is permitted to pursue its claims in federal court, Defendants argue

that the procedural due process claim must be dismissed because the process afforded by state

postdeprivation procedures is adequate, and the substantive due process claim must be dismissed

because the alleged deprivation here is not the sort of deprivation that supports such a claim.

Finally, as to Plaintiff's state-law unjust enrichment claim, Defendants argue that the Court

should decline to exercise supplemental jurisdiction, and even if the Court does exercise

supplemental jurisdiction, the claim should be dismissed as duplicative of other claims.

### I.    Res Judicata

"The doctrine of res judicata, or claim preclusion, holds that a final judgment on the merits of

an action precludes the parties or their privies from relitigating issues that were or could have

been raised in that action." *Hudson v. Universal Studios Inc.*, 235 F. App'x 788, 790 (2d Cir.

2007) (quoting *Monahan v. N.Y. City Dep't of Corrections,* 214 F.3d 275, 284 (2d Cir. 2000)).

"Res judicata applies when: (1) the previous action involved an adjudication on the merits; (2)

the previous action involved the same parties or those in privity with them; and (3) the claims

asserted in the subsequent action were, or could have been, raised in the prior action." *Id.* (citing

*Monahan*, 214 F.3d at 285). "[A] federal court must give the same preclusive effect to a state

court decision as a state would give it." *Schulz v. Williams*, 44 F.3d 48, 53 (2d Cir. 1994) (citing

*Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75 (1984). Under New York authority,

"res judicata applies where . . . there has been a final disposition on the merits from which no

appeal has been taken." *Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 268 (2d Cir. 1997)

(citations omitted).

 Here, Defendants contend that Plaintiff's claims are barred by res judicata. All parties

agree that the same parties were involved in this action and in Plaintiff's Article 78 proceeding in

state court, but the parties dispute whether the other two prongs of res judicata are met.

Defendants contend that the New York state courts' denial of class certification constituted a

final adjudication on the merits, and that the claims asserted in this action were raised in the state

action or could have been raised in that action. (Def.'s Mem., ECF No. 19, 6-8.) Plaintiff

disagrees. (Pl.'s Opp., ECF No. 20, 5-10.)

 The Court agrees with Plaintiff that there was no final adjudication on the merits and so

res judicata does not apply. In its state action, Plaintiff sought to certify a class consisting of:

> all persons and/or entities who (a) own, operate, manage and/or control any vehicle or
> vehicles with an "apportioned" license plate and/or registration issued in a state other
> than New York; and (b) have received, or will receive in the future, one or more parking
> summonses, issued with respect to such vehicles within the City of New York, on the
> face of which the license plate type is coded as "IRP" ("IRP Summons").

(Art. 78 Pet. ¶ 9.) In its decision denying Plaintiff's Article 78 petition, the State Supreme Court

was silent as to the request for class certification, save for its concluding sentence, "[A]ll other

relief requested is denied." In its appeal to the First Department, Plaintiff appealed the denial of

class certification, but like the lower court, the First Department did not address the question of class certification. Plaintiff did not appeal that decision to the Court of Appeals.[2] Defendants argue that the state courts' implicit denial of class certification, together with Plaintiff's failure to appeal that denial, constitutes "a final disposition on the merits from which no appeal has been taken." (Def.'s Mot. 7 (citing *Jacobsen*, 111 F.3d at 268)).

But class certification is a procedural question, distinct from the merits of a case. *See, e.g.*, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met" (citation omitted)); *Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*, 211 F.R.D. 228, 231 (S.D.N.Y. 2002) ("A motion for class certification should not, however, become a mini-trial on the merits." (internal citations omitted)). This is true in state, as well as federal, court. New York's provisions governing class certification closely resemble Fed. R. Civ. P. 23, and as such, direct courts to consider factors such as the practicality of pursuing separate actions, the interests of members of the putative class, and the typicality of representative parties, rather that the merits of the dispute. *See* C.P.L.R. §§ 901, 902. Thus, like federal courts, New York courts have found that at the class certification stage, they should refrain from closely examining the merits of the dispute. *See, e.g.*, *Weinstein v. Jenny Craig Operations, Inc.*, No. 105520/11, 2016 WL 1563026, at *1 (1st Dept. Apr. 19, 2016) (finding that "the merits of the claims were not as issue" on plaintiff's motion for class certification); *Kudinov v. Kel-Tech Const. Inc.*, 884 N.Y.S.2d 413, 415 (1st Dept. 2009) ("While it is appropriate in determining whether an action should proceed as a class action to consider whether a claim has merit, this 'inquiry is limited' and such threshold determination is

---

[2] The Court reviewed the electronic docket for Plaintiff's state action in the First Department and also performed a search for any record of an appeal in the Court of Appeals's electronic case database and found none.

not intended to be a substitute for summary judgment or trial."); *Brandon v. Chefetz*, 485 N.Y.S.2d 55, 59 (1st Dept. 1985) ("[I]nquiry on a motion for class action certification vis-a-vis the merits is limited to a determination as to whether on the surface there appears to be a cause of action which is not a sham."). Because New York courts do not treat decisions on class certification as an adjudication of the merits, the state courts' implicit denials of class certification cannot serve as final adjudications of judgments on the merits here.[3] Thus, Plaintiff's claims are not barred by res judicata.

## II.   Procedural Due Process

The Fourteenth Amendment provides, "No state shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. amd. XIV. "In a § 1983 suit brought to enforce procedural due process rights, a court must determine (1) whether a property interest is implicated, and, if it is, (2) what process is due before the plaintiff may be deprived of that interest." *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011) (citing *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002)). Here, no party disputes that Plaintiff has a protected property interest in the money paid in fines, and so the Court need only consider what process Plaintiff is due.

### A.   Whether Plaintiff was Required to Bring an Article 78 Proceeding

As a threshold matter, Defendants argue that Plaintiff may not bring this action in federal court, as it did not exhaust the Article 78 procedures provided for in state court.

---

[3] This decision is in line with the approaches taken by other federal courts outside this Circuit. *See, e.g. Rivera v. Puerto Rico Elec. Power Auth.*, 4 F. Supp. 3d 342, 353 (D.P.R. 2014) ("The Court agrees . . . that [Defendant] has failed to demonstrate that the state court proceedings were decided on the merits, emphasizing that a denial of class certification is not an adjudication on the merits." (citing *Smith v. Bayer Corp.*, 564 U.S. 299 (2011)); *Johnson v. Big Lots Stores, Inc.*, 639 F. Supp. 2d 696, 708 (E.D. La. 2009) ("The denial or decertification of a class is 'a procedural ruling, collateral to the merits of the litigation.'").

"When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Hellenic Am. Neighborhood Action Comm. v. City of New York ("HANAC")*, 101 F.3d 877, 880 (2d Cir. 1996) (citing *Hudson v. Palmer*, 468 U.S. 517, 532 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)). Where the claim is based on a random, unauthorized act by state employees, "the 'due process' required by the fourteenth amendment is satisfied by the availability at the state level of an adequate post-deprivation hearing." *Kraebel v. New York City Dep't of Hous. Pres. & Dev.*, 959 F.2d 395, 404 (2d Cir. 1992). In New York, "an Article 78 proceeding is a perfectly adequate postdeprivation remedy . . ." *HANAC*, 101 F.3d at 881. Such a proceeding is "an amalgam of the common law writs of certiori to review, mandamus, and prohibition," and through it, "constitutional issues can be decided." *Id.* Thus, where a plaintiff alleges he was deprived of a protected interest due to a random, unauthorized act by a state employee, he must pursue his claim through an Article 78 proceeding before resorting to federal court. *See id.; see also Nenninger v. Vill. of Port Jefferson*, 509 F. App'x 36, 39 n. 2 (2d Cir. 2013).

However, "[w]hen the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process." *HANAC*, 101 F.3d at 880; *see also Butler v. Castro*, 896 F.2d 698, 700 (2d Cir. 1990) ("[T]he existence of independent state relief does not defeat a Section 1983 claim where the deprivation complained of results from the operation of established state procedures."). "[W]here the deprivation is systemic, litigants have a well-established right to pursue their claims in federal court without resorting to state judicial remedies." *Van Oss v. New York*, 783 F. Supp. 2d 681, 695 (S.D.N.Y. 2011). In such situations,

"[a]lthough plaintiffs could bring their individual claims in state court under Article 78, they are not required to do so." *Id.*; *see also Corbley v. Cty. of Suffolk*, 45 F. Supp. 3d 276, 281-82 (E.D.N.Y. 2014) ("Plaintiff alleges that 'Defendant's procedural due process violations are systemic as opposed to random,' and therefore Plaintiff is not required to pursue an Article 78 proceeding."); *Reyes v. Cty. of Suffolk*, 995 F. Supp. 2d 215, 228 (E.D.N.Y. 2014) ("[B]ecause the Plaintiff here . . . alleges that the Defendant's procedural due process violations are systematic as opposed to random, the Court finds that the Plaintiff was not required to first initiate an Article 78 proceeding before commending this action."); *Ferrari v. Cty. of Suffolk*, No. 10 Civ. 4218, 2013 WL 4017022, at *8 (E.D.N.Y. Aug. 6, 2013) ("Because the deprivation here is allegedly systemic, and not random, the availability of an Article 78 proceeding does not bar Plaintiff's claim.").

Here, Plaintiff alleges a systemic deprivation of rights, in the form of PVB's policy of issuing and enforcing jurisdictionally defective summonses. Instead of alleging a random violation of its rights, Plaintiff alleges that "the state system itself . . . destroys [its] property interest, by operation of law." *Reyes*, 995 F. Supp. at 215 (quoting *Ferrari*, 2013 WL 4017022); *see also* Compl. ¶¶ 16, 19, 31, 33. Because Plaintiff alleges that the PVB's policy was a feature of the state system that it now seeks to challenge, Plaintiff need not have brought its claims in state court under Article 78 prior to bringing them in federal court. *See C.A.U.T.I.O.N., Ltd. v. City of New York*, 898 F. Supp. 1065, 1071 n. 6 (S.D.N.Y. 1995) ("Plaintiffs' allegations of systemic pressure to misuse parking tickets to raise revenue distinguish this case from those in which this Court has dismissed Section 1983 claims relating to the parking violations system on the basis of *Parrat* [*v. Taylor*, 451 U.S. 527 (1981), in which the Court found no procedural due process claim because of the existence of a meaningful postdeprivation remedy]").

### B.  Whether Plaintiff Has Stated a Procedural Due Process Claim

Because Plaintiff brings a systemic challenge to the Article 78 proceedings at issue, it need not have pursued its procedural due process claim through Article 78 proceedings before pursuing it here. Thus, the Court may proceed to the merits of Plaintiff's claim, namely whether Plaintiffs plausibly state a claim that the form of review afforded through the PVB administrative process, together with a state Article 78 proceeding, is inadequate for due process purposes. At the outset, it may be useful to clarify what is at issue here: Plaintiff does not argue that the amount of process afforded by the PVB/Article 78 process is insufficient. (Pl.'s Opp. 16.) Rather, Plaintiff challenges the "ostensible provision of an adequate hearing process . . . which systematically fails to apply the necessary legal standards that inhere to such a process." (*Id.*) Put simply, Plaintiff takes issue with the quality of the process afforded, rather than the quantity, arguing that administrative adjudicators at the state level did not actually apply the proper legal standards and thus, Plaintiff was deprived of "*meaningful*" administrative adjudication, in favor of "a hollow stamp of authority upon the binding determination of a kangaroo court." (*Id.* at 17 (emphasis in original).)

As the Second Circuit has noted, "[w]hen the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process." *HANAC*, 101 F.3d at 880 (emphasis added). As discussed above, because of the systemic nature of Plaintiff's claim, this means that the mere existence the PVB/Article 78 review process does not defeat Plaintiff's claim. But even taking as true all allegations in Plaintiff's complaints, the PVB/Article 78 review procedure in this case *did* satisfy the requirements of procedural due process; thus, though the deprivations occurred in the context of established state procedures and the availability of the

procedure does not ipso facto satisfy due process, the review procedure as alleged does, in fact, satisfy procedural due process.

Courts in this Circuit have found that, as a general matter, the PVB/Article 78 review process for challenging parking summonses meets the requirements of procedural due process. "There is no material factual dispute that the City's administrative parking violations system, together with the judicial system of the State of New York, provided plaintiff with adequate pre-deprivation remedies, adequate post-deprivation remedies, and sufficient notice that such remedies were available." *Rackley v. City of New York*, 186 F. Supp. 2d 466, 482 (S.D.N.Y. 2002); *see also Schaer v. City of New York*, No. 09 Civ. 7441 (CM), 2011 WL 1239836, at *9 (S.D.N.Y. Mar. 25, 2011) (noting that "[t]he City's administrative parking violations system has been held to be constitutional" and collecting cases); *Yu Juan Sheng v. City of New York*, No. 05 Civ. 1118, 2009 WL 6871132, at *9 (E.D.N.Y. June 26, 2009); *Iwachiw v. New York State Dep't of Motor Vehicles*, 299 F. Supp. 2d 117, 122 (E.D.N.Y. 2004), *aff'd*, 396 F.3d 525 (2d Cir. 2005). Thus, Plaintiff may only survive a motion to dismiss if the Court credits its argument that the PVB's policy of treating Apportioned Plates the equivalent of IRB plates so perverted the review process that it was no longer adequate.

To determine what process is due, the courts must balance the three factors set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), and consider:

> [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335; *see also Nnebe*, 644 F.3d at 154 n. 3. Plaintiff argues that through the procedures used, the risk of an erroneous deprivation was too high, because the policy instructed ALJs to

apply the law in an incorrect manner. But the Court is not swayed by this argument because the Second Circuit has made clear that policies directing ALJ decision-making are not just permissible but desirable, and that the availability of Article 78 proceedings may serve to cure any erroneous decisions made as a result of such policies.

The Second Circuit has noted, "Policies designed to insure a reasonable degree of uniformity among ALJ decisions are not only within the bounds of legitimate agency supervision but are to be encouraged." *Nash v. Bowen*, 869 F.2d 675, 680 (2d Cir. 1989) (citations omitted). "An ALJ is a creature of statute and, as such, is subordinate to the [agency] in matters of policy and interpretation of law." *Id.* (citations omitted); *see also Ass'n of Admin. Law Judges, Inc. v. Heckler*, 594 F. Supp. 1132, 1141 (D.D.C. 1984) ("On matters of law and policy, however, ALJs are entirely subject to the agency."). "Thus, the [agency's] efforts . . . to ensure that ALJ decisions conformed to [its] interpretations of relevant law and policy [are] permissible so long as such efforts [do] not directly interfere with 'live' decisions," *Nash*, 869 F.2d at 680 (citations omitted), and "in the absence of an instruction to apply court [holdings] to the cases before them, [ALJs] are obliged to apply agency policy and agency interpretations of the law." *Stieberger v. Sullivan*, 738 F. Supp. 716, 728 (S.D.N.Y. 1990) (citing *Nash*, 869 F.2d at 680).

That the ALJs complied with agency policy—and that the policy was ultimately found to be inconsistent with the law—does not mean that every decision previously made under that policy is invalid as a violation of procedural due process. There are numerous examples of cases where courts found an agency's interpretation of a statute to be invalid and remanded the action through which the interpretation was challenged to the agency for further proceedings; in none of these cases did the courts upset *earlier* determinations made under the policy. *See, e.g., De La Mota v. U.S. Dep't of Educ.*, 412 F.3d 71, 82 (2d Cir. 2005) (finding that Department of

15

Education interpretation of loan forgiveness statute was not entitled to deference and that

plaintiffs were entitled to loan forgiveness under the statute, and remanding plaintiffs' case for

further proceedings); *Claim of Gruber*, 89 N.Y.2d 225, 235-36, 674 N.E.2d 1354, 1361 (1996)

(finding Unemployment Insurance Appeal Board's definition of term to be impermissible and

remanding to the Board for further proceedings); *Mayfield v. Evans*, 938 N.Y.S.2d 290, 297 (1st

Dept. 2012) (finding a New York State Division of Parole regulation to conflict with a statute

and remanding case to the Board of Parole so that petitioner could receive a new hearing

consistent with due process). This limited impact makes sense—if every ruling finding an

agency's interpretation or policy was impermissible necessitated the invalidation of every

determination made under that interpretation or policy, agencies would be discouraged from

creating such interpretations and policies. And that would cut against the interest in uniformity

among ALJ decisions. There is another reason to limit the reach of a ruling that an interpretation

or policy is invalid: parties subject to that policy or interpretation have already been afforded the

chance to challenge it. That is to say, Plaintiff could have challenged each of the more than

40,000 summonses it received through the same PVB/Article 78 procedure through which it

challenged 38 summonses and ultimately prevailed.

"[W]here a due process violation is based on an established procedure rather than a

random, unauthorized act, the availability of additional process in an Article 78 proceeding does

not a bar a due process claim but, rather, is a relevant factor in the *Mathews* analysis."

*Rothenberg v. Daus*, 481 F. App'x 667, 676 (2d Cir. 2012), *as amended* (July 27, 2012) (citing

*Rivera-Powell v. N.Y.C. Bd. of Elections,* 470 F.3d 458, 466 (2d Cir. 2006). Here, the availability

of the Article 78 procedure is relevant to the second *Mathews* factor: the erroneous risk of

deprivation. "Article 78 review of quasi-judicial administrative proceedings, like those at issue

here, is limited . . . in scope to 'certiori to review,'" *id.* (citing Siegel, N.Y. Practice § 560 (5th

ed.)), in which the court reviews the agency decision under the deferential substantial evidence

standard, and may not substitute its view of the evidence for the agency's." *Id.* (citing *Café La*

*China Corp. v. N.Y.S. Liquor Auth.*, 841 N.Y.S.2d 30, 31 (N.Y. 2007). However, "[i]n an article

78 proceeding where the issue is one of pure statutory interpretation, deference to the agency is

not required." *Dunne v. Kelly*, 944 N.Y.S.2d 89, 90 (1st Dept. 2012) (citing *KSLM-Columbus*

*Apartments, Inc. v. New York State Div. of Hous. & Cmty. Renewal*, 5 N.Y.3d 303, 312 (N.Y.

2005)). Thus, courts have broad discretion to correct through Article 78 proceedings the type of

error alleged by Plaintiff here: an agency misinterpretation of the law.

The effectiveness of Article 78 proceedings at minimizing the risk of this type of error is

particularly obvious here, where Plaintiff in fact successfully challenged 38 summonses through

Article 78 proceedings. For those 38 summonses, Plaintiff received adverse decisions from the

PVB but then initiated an Article 78 proceeding, in which it argued that "Defendant-respondents

have . . . adopted a policy of deeming 'IRP' an accurate description of an out-of-state

'Apportioned' plate," and that "[t]his is wrong . . . because [of] the plain language of VTL

§ 238(2)." (Art. 78 Pet. ¶¶ 60-61.) While this argument did not sway the trial court, it carried the

day with the First Department. *See Nestle Waters*, 990 N.Y.S.2d at 516 ("[I]t is declared that

respondents' policy of deeming "IRP" an accurate description of 'Apportioned' license plates

issued outside of New York State is violative of § 238 of the Vehicle and Traffic Law."").

Plaintiff now challenges the very procedure that previously vindicated its rights and protected it

from erroneous deprivation. This leaves Plaintiff in an untenable position. *See Rackley*, 186 F.

Supp. 2d at 482 ("[P]laintiff does not even allege that the existing parking violations regime fails

to provide adequate pre or post-deprivation remedies. Indeed, he could not colorably do so since

plaintiff had the ability—and on a few occasions did—challenge the tickets entered against him

before defendants seized his car."); *see also Rivera-Powell v. New York City Bd. of Elections*,

470 F.3d 458, 468 (2d Cir. 2006) ("[Plaintiff] was clearly aware of this remedy, as she

commenced—though ultimately did not pursue—such an action challenging the Board's removal

of her name from the ballot.").

The Court recognizes that the availability of Article 78 proceedings is not an absolute

corrective against procedurally flawed initial hearings, in particular hearings presided over by

biased ALJs. *See Rothenberg*, 481 F. App'x at 676 (instructing district court to re-evaluate its

conclusion "that the availability of an Article 78 proceeding cured any unconstitutional ALJ

bias," in light of *Ward v. Vill. of Monroeville, Ohio*, 409 U.S. 57, 61 (1972) and *Concrete Pipe &

Products of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 618 (1993)).

*But see Locurto v. Safir*, 264 F.3d 154, 174 (2d Cir. 2001) (holding that due process does not

require a neutral adjudicator at a pre-termination hearing of a tenured public employee where the

state affords plaintiff, subsequent to his termination, a full adversarial hearing before a neutral

adjudicator, and that an Article 78 proceeding is such a hearing). Here, however, Plaintiff does

not allege that the ALJs were biased. Further, the Article 78 proceeding provided "a full

adversarial hearing before a neutral adjudicator" as to the question at issue, that of permissible

interpretations of VTL § 238(2), even though the scope of review in such proceedings is

generally limited.

The Court also recognizes that Plaintiff can no longer pursue Article 78 proceedings to

challenge the vast majority of the more than 40,000 tickets at issue, as a proceeding pursuant to

Article 78 must be commenced within four months after the determination to be reviewed

becomes final and binding. *See* CPLR § 217(1); *Best Payphones, Inc. v. Dep't of Info. Tech. &*

*Telecommunications of City of New York*, 5 N.Y.3d 30, 34 (N.Y. 2005). "The fact that [a

plaintiff] failed properly to pursue the state court action, and that it is now too late to do so, does

not affect . . . due process analysis." *Rivera-Powell*, 470 F.3d at 468 n. 9. "Where a state law

remedy gives a party a meaningful opportunity to challenge the state's action, he is not deprived

of due process simply because he failed to avail himself of the opportunity." *Id.* (quoting *Giglio

v. Dunn*, 732 F.2d 1133, 1135 (2d Cir. 1984) (internal quotation marks and alterations omitted);

*see also Mordukhaev v. Daus*, 457 F. App'x 16, 21 (2d Cir. 2012) ("[W]hile [plaintiff] did not

avail himself of an Article 78 proceeding, the existence of that proceeding confirms that state law

afforded him adequate process to defeat his constitutional claim."). Plaintiff nowhere alleges that

Article 78 proceedings were unavailable to it to challenge the remaining summonses. That

Plaintiff did not pursue this opportunity does not bear on the Court's analysis.

Finally, the Court rejects Plaintiff's argument that its case is analogous to a line of cases

in which courts in this Circuit found Suffolk County to have violated plaintiffs' right to

procedural due process. In those cases, plaintiffs' vehicles had been seized and retained by

Suffolk County, and the plaintiffs alleged that the County did not follow the due process

requirements for retention hearings laid out by the Second Circuit in *Krimstock v. Kelly*, 306

F.3d 40 (2d. Cir. 2002), or as required by the Suffolk County Code. *See, e.g. Fasciana v. Cnty.

of Suffolk*, 996 F. Supp. 2d 174 (E.D.N.Y. 2014); *Reyes v. Cnty. of Suffolk*, 995 F. Supp. 2d 215

(E.D.N.Y. 2014); *Mateo v. Cnty. of Suffolk*, No. 12 Civ. 6160, 2014 WL 5425536 (E.D.N.Y. Oct.

23, 2014); *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34 (E.D.N.Y. 2011); *Boyle v. Cnty. of

Suffolk*, No. 10 Civ. 3606, 2010 WL 4340627 (E.D.N.Y. Oct. 19, 2010). The plaintiffs in these

cases alleged that Suffolk County did not consider all the required factors or make the required

findings and shifted the burden of proof incorrectly. *See Ruane v. Cty. of Suffolk*, No. 12 Civ.

1658, 2015 WL 2337329, at *5 (E.D.N.Y. May 13, 2015) (summarizing prior Suffolk County cases). Courts in the Eastern District found that these practices violated plaintiffs' procedural due process rights, *id.*, and Plaintiff argues that this action is analogous. (Pl.'s Opp. 16-17.)

However, this case is different for several reasons. First, the Second Circuit in *Krimstock* specifically rejected the argument that Article 78 proceedings provided sufficient means for claimants to challenge the legitimacy of the retention of their vehicles, *see Krimstock*, 306 F.3d at 60, while courts in the Circuit have consistently found that Article 78 proceedings, together with PVB review, do constitute sufficient means to challenge parking tickets. Second, and perhaps more importantly, in the Suffolk County cases, plaintiffs alleged that hearing officers, judges, and prosecutors consistently ignored the relevant law or acted in direct contradiction of it, while here, Plaintiff alleges that the ALJs applied a policy that was an incorrect interpretation of the law. This distinction is key. The Suffolk County plaintiffs showed that Suffolk County subjected them to proceedings that were without question inadequate under Second Circuit precedent and by statute. By contrast, Plaintiff here alleges that Defendants subjected it to proceedings previously found to be legally adequate, in which Defendants misinterpreted relevant caselaw. Despite Plaintiff's assertion that meaning of VTL § 238(2) was clear at the time that PVB adopted its policy, in fact, courts in New York had not previously ruled on the interchangeability of "IRP" and "Apportioned" as descriptors. *Nestle Waters*, 990 N.Y.S. 2d at 516. And, as discussed above, this misinterpretation was eventually corrected through the very procedure challenged. For these reasons, the Suffolk County cases do not compel the conclusion that Plaintiff's procedural due process rights were violated here.

In sum, even taking as true all of Plaintiff's allegations, the Court finds that the PVB/Article 78 procedure as alleged by Plaintiff constituted adequate process. This is because

the Article 78 proceedings serve as a backstop against the kinds of erroneous determinations alleged by Plaintiff. The mere availability of Article 78 proceedings, which are often limited in scope, does not operate as a complete shield from procedural due process claims where, as here, Plaintiff alleges due process violations based on established procedures. But Article 78 proceedings allow for unfettered review of alleged errors in statutory interpretation, and so in this case, the availability of such proceedings mitigates the risk of erroneous deprivation. The Court need look no further than Plaintiff's own successful Article 78 proceedings for proof of that. Accordingly, Plaintiff's procedural due process claim is dismissed.

## III.   Substantive Due Process

"Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill-advised." *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995) (quoting *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994)) (internal quotation marks omitted). It represents "an outer limit on the legitimacy of governmental action," and thus, "[s]ubstantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999)

"Substantive due process protects only those interests that are 'implicit in the concept of ordered liberty,'" *Local 342, Long Island Pub. Serv. Employees, UMD, ILA, AFL-CIO v. Town Bd. of Town of Huntington*, 31 F.3d 1191, 1196 (2d Cir. 1994) (quoting *Palko v. Connecticut*, 203 U.S. 319, 325 (1937)), and "the doctrine of judicial self-restrain requires courts to 'exercise the utmost care' when presented with a request to define or develop rights in this area." *Id.* (quoting *Collins v. City of Harker Heights*, 503 U.S. 115 (1992)). In line with that, courts in this Circuit have found that "[n]ot all property rights are entitled to the protections of substantive due

21

process." *Reyes v. Cty. of Suffolk*, 995 F. Supp. 2d 215, 230 (E.D.N.Y. 2014) (citation omitted).

Courts have found that the substantive due process clause does not reach individuals' property

interests in their vehicles, *see, e.g. id.*, and it "does not protect plaintiffs from modest fines."

*Leder v. Am. Traffic Sols., Inc.*, 81 F. Supp. 3d 211, 224 (E.D.N.Y. 2015), *aff'd*, 630 F. App'x 61

(2d Cir. 2015) [4]; *see also id.* (collecting cases).

Here, Plaintiff alleges that it was fined a total of $4,101,835, through the issuance of

41,800 jurisdictionally defective summonses, for an average fine of about $98 per summons.

(Compl. ¶¶ 26-27.). Plaintiff alleges that these fines violated substantive due process. It argues

that the enforcement of the summonses against Plaintiff was *ultra vires*, arbitrary, and irrational,

because the First Department found the PVB's policy to be contrary to well-established law.

(Compl. ¶¶ 42-43.) But even if the Court were to find that Plaintiff's property interest in each

fine was sufficient to support a due process claim—a questionable proposition[5]—Plaintiff has

not shown that "the government's infringement was arbitrary, conscience shocking, or

oppressive in the constitutional sense," rather than "incorrect or ill-advised." *Ferran v. Town of*

*Nassau*, 471 F.3d 363, 370 (2d Cir. 2006) (quoting *Lowrance v. C.O. S. Achtyl*, 20 F.3d 529, 537

(2d Cir. 1994)) (internal quotation marks omitted). Recently, the Second Circuit considered a

case where the plaintiff alleged that defendants had reduced the time that traffic lights showed

---

[4] In affirming the District Court's decision, the Second Circuit noted, "Although the Supreme Court has never held that a property interest so modest as the $65.00 traffic fine incurred by Leder is a fundamental right, we need not decide that issue here because, in any event, the alleged deprivation was not sufficiently arbitrary or outrageous to offend substantive due process." *Leder*, 630 F. App'x at 61 (quoting *Idris v. City of Chicago*, 552 F.3d 564, 566 (7th Cir.2009) (citations, internal quotation marks, and alterations omitted).
[5] As noted, each summonses resulted in an average fine of $98, the sort of "modest fine" other courts have found not to constitute a property interest for substantive due process purposes. The quantity of fines here does not necessarily change that analysis. *See All Aire Conditioning, Inc. v. City of New York*, 979 F. Supp. 1010, 1015 (S.D.N.Y. 1997), *aff'd*, 166 F.3d 1199 (2d Cir. 1998) (Rejecting substantive due process claim where the plaintiffs purported to have a property interest in the time employees spent contesting parking tickets and noting, "[w]hile it is regrettable if plaintiffs were ticketed in circumstances in which they in fact were legally parked and if the numbers of vehicles and incidents resulted in a substantial expenditure, plaintiffs' interest is no different in principle than that of a citizen who receives a single unjustified ticket.").

yellow below the time required by state law. *See Leder*, 630 F. App'x at 61. There, as here, the

plaintiff classified defendants' actions as "*ultra vires*" and argued "that such *ultra vires*

government action can be 'sufficiently arbitrary to amount to a substantive due process

violation.'" *Id*. (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 789 (2d Cir. 2007)).

But the plaintiff's argument failed, "because it confuses *ultra vires* action with action contrary to

governing statutory provisions." *Id*. The Second Circuit concluded, "[S]ubstantive due process

does not entitle federal courts to examine every alleged violation of state law, especially ones

that, while perhaps vexatious, are more routine than egregious." *Id*.

In addition to its constitutional claims, Plaintiff brings a state law claim of unjust

As in that case, Plaintiff here alleges that Defendants' actions ran contrary to governing

statutory provisions. As did the Second Circuit, this Court finds that such an allegation does not

constitute conduct sufficiently arbitrary, conscience-shocking, or oppressive as to implicate

substantive due process. Plaintiff's substantive due process claim is dismissed.

## IV.    State Law Claim

In addition to its constitutional claims, Plaintiff brings a state law claim of unjust

enrichment. While federal courts have supplementary jurisdiction over state law claims that are

closely related to the claims over which they have original jurisdiction, 28 U.S.C. § 1367(a), a

district court may decline to exercise supplementary jurisdiction where "the district court has

dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). "Once a

district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of

judicial economy, convenience, fairness, and comity, in deciding whether to exercise

jurisdiction." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (citations and

internal quotation marks omitted). "[I]n the usual case in which all federal-law claims are

eliminated before trial, the balance of factors to be considered under the pendent jurisdiction

doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law

claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988). There is nothing to distinguish this action from "the usual case." Therefore, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim and dismisses it without prejudice to refiling in state court.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted and Plaintiff's motion for summary judgment is denied. The Clerk of Court is respectfully requested to terminate ECF Nos. 17 and 21.

**SO ORDERED.**

**Dated**:   May 25, 2016
            New York, New York

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**